**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

*In re:* Application Pursuant to
28 U.S.C. § 1782 of

FARHAD AZIMA,

                    Petitioner,

            v.

AMIR ALI HANDJANI,

                    Respondent.

No. 1:21-mc-00501-PGG

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN OPPOSITION TO THE PETITION OF FARHAD
AZIMA FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 2

    A.   RAKIA's Litigation Against Petitioner Farhad Azima. ............................ 2

    B.   Respondent's Prior Written and Oral Testimony in The Matter..................... 3

    C.   The English Appeal..................................................................................... 7

    D.   Azima's Section 1782 Application. ........................................................... 9

ARGUMENT ..................................................................................................... 10

   I.   Standard Under 28 U.S.C. § 1782.............................................................. 10

  II.   The Court Should Not Allow Azima to Take a Duplicate Deposition. ........... 11

    A.   The Court Should Deny the Deposition Because Respondent Has Already Testified, and Duplicate Depositions Are Not Allowed. ....................................................... 11

    B.   The Court Should Not Compel a New Deposition of Respondent Because His Prior Testimony Already Establishes His Lack of Knowledge. .................................... 13

    C.   Azima's Evidence Does Not Suggest That Respondent Was Involved in the Facts Underlying His Claim, So He Has No Right to Depose Him.............................. 14

    D.   Depositions Are Not Permitted in English Procedure, and this Court Should Follow *Wildbrain* in Denying the Deposition on That Ground. ...................................... 16

 III.   Document Discovery Should Not Be Permitted Because the Request Is Undefined and the Authority Azima Seeks Is Overbroad and Untethered to His Claims. ................................... 17

 IV.   In the Alternative, the Court Should Modify the Proposed Order and Issue a Protective Order. .......................................................................................................... 21

CONCLUSION.................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*In re Aluminum Warehousing Antitrust Litig.*,
  No. 13-MD-2481 (PAE), 2020 WL 505042 (S.D.N.Y. Jan. 31, 2020) ...................................20

*In re Application of Auto-Guadeloupe Investissement S.A.*,
  No. 12 MC 221 RPP, 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012).......................................18

*In re Application of Christen Sveaas*,
  No. 19-MC-70, 2008 WL 4935873 (S.D.N.Y. Oct. 2, 2008) ...................................................12

*In re Application of Elvis Presley Enterprises LLC*,
  No. 15mc386 (DLC), 2016 WL 843380 (S.D.N.Y. March 1, 2016).......................................20

*In re Ex Parte Application of Qualcomm Inc.*,
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) .....................................................................18, 20

*In re Asia Mar. Pac. Ltd.*,
  253 F. Supp. 3d 701 (S.D.N.Y. 2015)..........................................................................18, 20

*Azima v. Del Rosso, et al.*,
  20-cv-954-WO-JLW (M.D.N.C.) ....................................................................................8

*Azima v. RAK Inv. Auth.*,
  926 F.3d 870 (D.C. Cir. 2019) ......................................................................................3

*Bleichert v. N.Y. State Educ. Dep't*,
  793 F. App'x 32 (2d Cir. 2019) .....................................................................................8

*Bonnie & Co. Fashions v. Bankers Tr. Co.*,
  945 F. Supp. 693 (S.D.N.Y. 1996) ................................................................................13

*Edwards v. Daniels*,
  No. 17-CV-05018 (PMH), 2020 WL 3057412 (S.D.N.Y. June 9, 2020) ...............................18

*In re Escallon*,
  No. 18-MC-207 (DLC), 323 F. Supp. 3d 552 (S.D.N.Y. 2018) .............................................14

*Fashion Exch. LLC v. Hybrid Promotions, LLC*,
  No. 14CV1254SHSOTW, 2019 WL 1533212 (S.D.N.Y. Apr. 9, 2019)........................11, 13

*Henry v. Morgan's Hotel Grp., Inc.*,
  No. 15-CV-1789 (ER)(JLC), 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) .............................18

*In re Hulley Enters., Ltd.*,
  358 F. Supp. 3d 331 (S.D.N.Y. 2019)............................................................................12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)..........................................................................................10, 16

*In re Kei Animal Clinic*,
   No. 20-MC-80183-VKD, 2020 WL 6381341 (N.D. Cal. Oct. 30, 2020)................................20

*Kiobel v. Cravath, Swaine & Moore LLP*,
   895 F.3d 238 (2d Cir. 2018)..............................................................................10, 16

*Lee v. Kucker & Bruh, LLP*,
   No. 12 CIV. 4662 BSJ JCF, 2013 WL 680929 (S.D.N.Y. Feb. 25, 2013) ...........................14

*Neogenix Oncology, Inc. v. Gordon*,
   No. CV144427JFBAKT, 2017 WL 1207558 (E.D.N.Y. Mar. 31, 2017)........................17, 19

*In re Polygon Glob. Partners LLP*,
   No. 21 MISC. 364 (ER), 2021 WL 2117397 (S.D.N.Y. May 25, 2021) ...............................13

*Saint-Gobain Adfors S.A.S. v. 3M Co.*,
   No. 020MC00052MJDKMM, 2020 WL 6111632 (D. Minn. Oct. 16, 2020) .................16, 17

*In re T-Systems Scheiz AG*,
   No. 1:20-mc-308-GHW, 2020 WL 7384007 (S.D.N.Y. Dec. 16, 2020)...............................18

*In re Top Matrix Holdings Ltd.*,
   No. 18 MISC. 465 (ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ..................................13

*In re WildBrain Family International Limited*,
   No. 19-MC-527 (JPO), 2020 WL 6135765 (S.D.N.Y. Oct. 19, 2020)..................................16

*In re XPO Logistics, Inc.*,
   No. 15-MC-205 (LGS)(SN), 2017 WL 2226593 (S.D.N.Y. May 22, 2017).........................19

**Statutes**

28 U.S.C. § 1782................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 26(b)(1).......................................................................................12

Fed. R. Civ. P. 26(b)(2)(C)(i) .............................................................................12

Fed. R. Civ. P. 30(a)(2)(A)(ii) ............................................................................11

Moore's Federal Practice .....................................................................................12

## INTRODUCTION

Petitioner Farhad Azima has been found liable in the English litigation underlying this Petition for defrauding the investment arm of one of the constituent emirates of the United Arab Emirates.  That part of the underlying litigation is over in the trial court, and the fraud judgment against Azima and in favor of the plaintiff there, the Ras al Khaimah Investment Authority (RAKIA), has been affirmed on appeal.  Azima is currently pursuing a counterclaim against RAKIA in which he alleges that an investigator who worked for RAKIA's lawyers at Dechert LLP obtained certain of his emails that evidenced the fraud by improperly accessing his email account.  Azima failed to prove his claim of improper access in the trial court, but during the pendency of his appeal, he presented new evidence to the appellate court, principally including a hearsay report by an investigator claiming to have found a witness who purportedly confessed to carrying out the hacking, albeit in a different manner than Azima had sought to prove at trial.  The appellate court remanded to allow Azima to try to prove his counterclaim on his new theory.

This Petition purports to seek evidence from Respondent related to that counterclaim, including seven years of documents and a new deposition.  But this is redundant and unduly harassing.  Azima has already taken Respondent's testimony:  Respondent submitted sworn written testimony in the English trial, and then Azima's barrister cross-examined him on the stand at trial over the course of two days.  The cross-examination specifically covered Azima's hacking allegations, including the very documents that Azima submits in support of his allegations here.  As Respondent clearly testified, he was not involved in the hacking, and this was undisputed:  Azima's own counsel acknowledged that he was "not suggesting for one moment" that Respondent "played any part in the hacking."  And that is still true.  Further, the trial court accepted Respondent's testimony and found him credible.  The new (hearsay) evidence that Azima submitted on appeal had nothing to do with Respondent, and Azima

1

submits nothing in this Court suggesting that Respondent had anything to do with the hacking.

In short, nothing has changed since trial that would warrant compelling Respondent to give new

testimony.  That Respondent testified on behalf of RAKIA against Petitioner certainly does not

justify the redundant discovery here.  Azima's request for seven years of emails from

Respondent's personal Gmail account is burdensome and intrusive, and not justified by any hint

that Respondent would have evidence relevant to Azima's hacking claim.  Azima's request for

discovery should be denied.

## STATEMENT OF FACTS

### A.     RAKIA's Litigation Against Petitioner Farhad Azima.

The underlying litigation here, *RAKIA v. Farhad Azima*, Case No. HC-2016-002798 (the

"English Proceedings"), was brought by the investment arm of the emirate of Ras al Khaimah

(RAK) against Petitioner Farhad Azima, a former business partner who committed millions of

dollars of fraud and embezzlement in the course of his dealings with RAKIA.

RAKIA sued Azima in September 2016 in the High Court of Justice Business and

Property Courts of England and Wales seeking to recover the funds that Azima had obtained

through his frauds.  *See Ras Al Khaimah Investment Authority v. Farhad Azima*, Case No. HC-

2016-002798.  RAKIA alleged, and the English Court found, that Azima had engaged in a

kickback scheme, in which he received approximately $1,562,000 in commission, purportedly

for brokering the sale of a hotel owned by RAKIA, even though the hotel was never sold.  *See*

Barger Decl. Ex. 1 (English Judgment) ¶¶ 23, 176–78, 181, 189.  RAKIA also alleged, and the

English Court also found, that Azima falsely claimed to have contributed money to his joint

venture with RAKIA, inflating its value and thereby tricking RAKIA into overpaying for its

interest, *id.* ¶¶ 215, 218, 220.5; and that he fraudulently induced RAKIA to sign a settlement

agreement, *id.* ¶¶ 120, 131, 140–43, 154.

Part of Azima's defense in the English Proceedings arose from the fact that, as Azima's attorney here acknowledges, *see* Decl. of Dominic Holden ("Holden Decl.") ¶ 7, some of the incriminating evidence on which RAKIA based its claim consisted of copies of Azima's own emails that RAKIA had evidently obtained from the internet.  Azima claimed that his email account had been hacked and accused RAKIA of being responsible for that hack.  Azima initially sued RAKIA on this hacking theory in a separate litigation in D.C. District Court in September 2016, and RAKIA moved to dismiss, which the District Court initially denied, but the D.C. Circuit reversed and ordered dismissal on the ground that Azima was bound by a forum selection clause and had contractually committed to litigating his claim against RAKIA in the courts of England and Wales.  *See Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874, 876–77, 880 (D.C. Cir. 2019).  In the English litigation, Azima argued that the purportedly hacked emails should be excluded from evidence, and, after his U.S. claim was dismissed, he also asserted his hacking allegations in the English Proceedings as a counterclaim.[1]  Barger Decl. Ex. 1 (English Judgment) ¶ 383.

## B.    Respondent's Prior Written and Oral Testimony in The Matter.

After three years of litigation, including pre-trial document disclosure under Part 31 of the English Civil Procedure Rules, RAKIA tried its fraud claims in January 2020 in a bench trial that lasted over two weeks.  The topics at issue included Azima's claim that RAKIA was factually responsible for the hacking and therefore should be legally precluded from relying on the hacked evidence.  The evidence at trial ultimately persuaded the trial court that Azima was

---

[1] In his D.C. suit, Azima claimed that he was hacked on or about October 14, 2015 through spear-phishing attacks and that he learned of the hack after July 2016.  *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 873 (D.C. Cir. 2019).  RAKIA moved to dismiss Azima's complaint.  The district court originally denied dismissal under the forum selection clause; on appeal, the D.C. Circuit held that the district court should have dismissed under the forum selection clause.  *Id.* at 874, 876–77.

"liable to RAKIA in the sum of $1,733,000 . . . for fraudulent misrepresentation," Barger Decl. Ex. 1 (English Judgment) ¶¶ 157–59, and it ordered a judgment of $8.3 million in RAKIA's favor, *see* Barger Decl. Ex. 3 (Final Order) ¶¶ 1, 7–8.  The evidence also led the trial court to observe that "there are a number of significant features of Mr. Azima's hacking case which are improbable and point away from RAKIA being responsible for the hacking," Barger Decl. Ex. 1 (English Judgment) ¶ 378, and to conclude that Azima "has not . . . proved that RAKIA was responsible for the hacking of [his] emails," *id.* ¶ 382.

Respondent Amir Handjani is a U.S. lawyer and resident of New York who, after working at the Department of Justice, started a business in the U.A.E. and developed a relationship with RAK, which included, for example, serving on the board of RAK Petroleum. Barger Decl. Ex. 4 (English Proceedings Day 7 Transcript) 167:8–18, 175:2–13.  RAKIA called Respondent as a witness in the English trial related to its claims of fraud against Azima.  His sworn written witness statement (consistent with English procedure) was put in by RAKIA to explain how Azima had solicited Respondent to help him negotiate his settlement agreement, and how Respondent had played a (limited) role as a go-between in those discussions.  Respondent explained that he had had a passing social relationship with Azima before Azima unexpectedly contacted him to request his assistance in resolving Azima's dispute with RAKIA.  Holden Decl. Ex. B ¶¶ 13–14.  He further explained that he acted primarily as a "channel of communication" between Azima and RAKIA representatives and was only intermittently involved in the parties' settlement discussions.  *Id.* ¶¶ 19–20.

At trial, Respondent sat for several hours of cross-examination over two days by Azima's English counsel.  Barger Decl. Exs. 4 and 5 (English Proceedings Days 7 and 8 Transcripts). The subject matter of the cross-examination included, among other topics, the alleged hack of

4

Azima's emails.  Azima's hacking theory was that the hacking was carried out by RAKIA's

agents, including an investigator named Stuart Page.  *See* Barger Decl. Ex. 1 (English Judgment)

¶¶ 257.3–.4.  Azima did not allege or argue at trial that Respondent was involved in the putative

hacking incident.

Respondent attested in his witness statement that he had no knowledge of or involvement

in any hacking of Azima and did not become aware of Azima's hacking until August 16, 2016.

Holden Decl. Ex. B ¶ 23.  At trial, under cross-examination by Azima's counsel, Respondent

reaffirmed:  "under oath, with a penalty of perjury, I had no knowledge of Mr Azima's material

being hacked, who hacked it or of it appearing online."  Barger Decl. Ex. 5 (English Proceedings

Day 8 Transcript) 56:12–25.  Indeed, Petitioner's own counsel conceded in the course of the

questioning that he was "not suggesting for one moment" that Respondent "played any part in

the hacking."  *Id.* at 56:16–18.

In his cross-examination of Respondent, Petitioner's counsel covered (among other

topics) a number of emails and other documents.  As relevant here, the covered documents

included the "Project Update" document and the set of emails that Azima includes as Exhibits C

and D in support of this Petition:

- Exhibit C is a document marked "RAK Project Update" and dated March 26, 2015.  This document appears to be a confidential intelligence report related to RAK that includes, *inter alia*, information about efforts by Azima to create difficulties for RAK.  The document details, for example, its author's conclusion that Azima was assisting an effort to generate false claims about RAK, and that an investigator had been hired who had likely obtained improper access to RAK's email traffic.  The document does not mention Respondent or bear any facial connection to him, and the evidence at trial showed that it was commissioned by a UK investigator named Stuart Page.  Petitioner's counsel asked Respondent about this document during cross-examination, and Respondent testified in response that he had "no knowledge of its content or its author or the work being done."  Barger Decl. Ex. 4 (English Proceedings Day 7 Transcript) 185:17–23.  Counsel for Azima asked Respondent about his relationship with Page.  Respondent testified

that he had never met Page other than at the trial itself, and had no knowledge of what work, if any, Page had done on behalf of RAKIA.  *Id.* at 183:3–184:18.

- Exhibit D is a copy of email correspondence from April 2015 between Respondent and two RAK officials.  In one email on April 4, one of the officials told Respondent that "the boss" (evidently RAK's Ruler) "is adamant that we bring charges against" Azima and that he "wants me to get you on the case to file some sort of charges against Farhad."  In another email that same day, the other official, Jamie Buchanan, told Respondent that RAK's Ruler "wanted us to target FA" and asked, "on what basis would we do this?"  Holden Decl. Ex. D at 2.  Respondent responded, "I'm not sure that's possible at the moment.  I don't know what basis you would target him.  Thoughts?"  *Id.*  Azima has contended that Buchanan's use of "target" referred to improper forms of retribution, and Azima's counsel asked Respondent whether that was so at trial.  Respondent testified that he had understood Buchanan's request to mean that RAKIA "should consider whether criminal or civil charges could be brought against Mr. Azima" and recalled thinking at the time that there was "no basis on which to bring charges" against him, Holden Decl. Ex. B ¶ 17, and testified that this was why he responded that there was no basis on which to "target[]" Azima.  The English Court's ruling explicitly credited much of Respondent's testimony.  Barger Decl. Ex. 1 (English Judgment) ¶¶ 280, 283–87.

The Petition also relies on a third piece of evidence from the trial:  Exhibit E to the Petition is a document entitled "View from the window."  That document, an undated set of notes and draft text, sets out its author's evident speculation that various persons had perpetrated a series of serious frauds against RAK before new leadership took over the Emirate, and that Petitioner Azima "appears to have orchestrated, if not (fully) participated in numerous fraudulent activities."  Holden Decl. Ex. E.  That document was in evidence at trial.  It bears no facial connection to Respondent, and Azima did not allege at trial that Respondent had created or had anything to do with that document.  His counsel did not question Respondent about it even though he had the opportunity to do so.  Azima's counsel did not suggest during cross-examination that Respondent's testimony on the point that he had no knowledge of the hacking and that these emails in particular had nothing to do with hacking was false or inaccurate.

### C.     The English Appeal.

In its findings after trial, the English Court rejected Azima's claims that RAKIA was responsible for the alleged hacking, finding that Azima had not proved that RAKIA engaged in hacking, and denied his counterclaim.  Barger Decl. Ex. 1 (English Judgment) ¶¶ 260–372, 381–82; Barger Decl. Ex. 3 (Final Order) ¶ 8.  The court found instead that Azima had wrongly enriched himself at RAKIA's expense through the kickback scheme and fraudulent representations that RAKIA had alleged.  Barger Decl. Ex. 1 (English Judgment) ¶¶ 140–43, 154.  The English Court awarded RAKIA more than $8.3 million in damages, including interest and costs, against Azima.  *See* Barger Decl. Ex. 3 (Final Order) ¶¶ 1, 7–8.

Azima was granted leave to appeal the English Court's ruling to the English Court of Appeal.  *See* Holden Decl. ¶ 10.  The appellate court rejected all arguments that Azima made with respect to the law and facts as to fraud, and affirmed the trial court's finding that Azima was liable for fraud.  Azima also argued to the Court of Appeal that RAKIA's evidence should not have been admitted against him if it had been obtained through hacking, but the Court of Appeal rejected that argument and held that the probative evidence of fraud was admissible even assuming *arguendo* that it had been improperly obtained.  *See* Barger Decl. Ex. 7 (English Court of Appeal Judgment) ¶¶ 122–28, 147.

With respect to the hacking, the Court of Appeal "decline[d]" to question the correctness of the trial court's determination that Azima had failed to prove hacking on the record that was before the court.  *Id.* ¶¶ 140–41.  However, it granted a re-trial of the hacking issue principally in light of the declaration of a new investigator hired by Azima after the trial, who stated that he had spoken to a new, non-party witness in India and obtained his confession to having carried out the hacking on the instructions of an investigator working for RAKIA's lawyers, albeit in a

different way and at a different time than Azima had alleged at trial.  *See id.* ¶ 132.[2]  The Court

of Appeal noted that the hacking question was "hotly in dispute" and that the new evidence was

"at variance" with Azima's original case, but remanded for a determination whether the new

evidence was true.  *Id.*  ¶ 134.

The new evidence did not relate to Respondent, and Azima did not assert that it

implicated him.  The Court of Appeal did not mention or discuss Respondent or his evidence in

its decision, either in connection with the hacking counterclaim (*id.* ¶¶ 129–146) or elsewhere.[3]

Following the Court of Appeal decision, Azima filed a counterclaim with the English

Court.  *See* Holden Decl. ¶ 12; Holden Decl. Ex. A.  In the counterclaim, Azima alleges that

Respondent may have received and/or responded to instructions to "target" and "go after" Azima

and that Respondent was aware of the hacking of Azima's information at least as of August 16,

2016.  Holden Decl. Ex. A ¶¶ 15c, 69.  Azima has also joined to his counterclaim additional

parties as defendants, including the Dechert firm, RAKIA's former lead attorney at Dechert, and

the investigator Stuart Page.  *See* Holden Decl. ¶ 12; Holden Decl. Ex. A.  He has not named

Respondent as a defendant.

---

[2] This appears different to ordinary practice in the U.S. federal appellate courts, where it would be anomalous to reverse a trial judgment on the basis of evidence developed after trial, *see e.g., Bleichert v. N.Y. State Educ. Dep't*, 793 F. App'x 32, 35 (2d Cir. 2019) (holding that an appellate court will generally not consider material not included in the district court record absent "extraordinary circumstances"), and where Rule 802 of the Federal Rules of Evidence bars the admission of hearsay.

[3] Azima has another pending action in the U.S. related to the hacking; Respondent's name does not appear in the complaint in that action, and Azima's request to take discovery from Respondent in that action was denied as premature.  *See Azima v. Del Rosso, et al.*, 20-cv-954-WO-JLW (M.D.N.C.) ECF No. 1 (Azima's complaint against U.S. defendants related to the alleged hacking); ECF No. 30 (denying Azima's motion seeking leave to commence discovery and serve subpoenas on Respondent and other defendants).

D.      **Azima's Section 1782 Application.**

On June 29, 2021, Azima filed this Petition and supporting materials with this Court,

seeking an order under 28 U.S.C. § 1782 authorizing service of subpoenas that would seek

documents from Respondent and compel him to sit for additional deposition testimony.  ECF No.

1 at 1.  Contrary to ordinary practice, the application **does not** include the proposed subpoenas.

ECF No. 2-2.[4]  Instead, Azima sets out in his Proposed Order the documents he would be

authorized to seek.  The order would allow Azima to compel production of documents from a

seven-year period, "from September 2014 to present," *id.*, related to:

- Farhad Azima
- Azima's [unnamed] associates
- The Project Update report and similar reports prepared about Mr. Azima and his associates
- The instructions to 'target' and 'go after' Mr. Azima
- The 'View from the Window' document
- The purported discovery of Mr. Azima's stolen data in August 2016
- Websites published about Mr. Azima and links published on those websites between August 2016 and June 2019
- Documents describing communications between Mr. Handjani and Mr. Azima
- CyberRoot
- BellTroX
- RAK Ruler Sheikh Saud bin Saqr Al Qasimi
- James Buchanan
- Stuart Page
- Any companies controlled by Mr. Page including Stuart Page MEFZ
- Vital Management Services, Inc.
- Nicholas Del Rosso
- Northern Technology Inc.
- Gravitas International LLC

Azima contends that the "RAK Project Update Report" and "View from the Window"

document (*see supra* at 6–7), as well as the emails attached to Azima's attorney declaration,

support asking for these categories of documents.

---

[4] Respondent's counsel requested that Azima share a proposed subpoena, but Azima declined to do so.  Barger Decl. ¶¶ 9–11 .

Azima served the Petition on Respondent on June 29, 2021.  For the reasons set forth below, the Petition should be denied.

## ARGUMENT

### I.    Standard Under 28 U.S.C. § 1782.

The Court should deny Azima's request for discovery because the Petition does not show that discovery is warranted, and compelling Respondent to submit to further examination and to turn over private documents in response to broad, speculative document requests would be burdensome and unfair.

Where the minimum statutory prerequisites for discovery under 28 U.S.C. § 1782 are satisfied, the Court's "decision to grant" a petition under the statute "is discretionary[.]"  *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 242 (2d Cir. 2018).[5]  The Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004), lists four factors that may weigh against granting such a petition, which include (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) the "nature of the foreign tribunal," the "character of the proceedings underway abroad," and the "receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome."  Those factors are not exclusive.  *Id.*  Here, the burden on the

---

[5] The statute requires that (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery be for use in a proceeding before a foreign tribunal, and (3) the application be made by a foreign or international tribunal or an interested person.  *Kiobel*, 895 F.3d at 243.  Respondent does not dispute that these are satisfied here.

Respondent, the fact that English litigation does not allow depositions, and the totality of the circumstances support denial of the Application.

**II.     The Court Should Not Allow Azima to Take a Duplicate Deposition.**

The Court should deny Azima's request to depose Respondent as unduly burdensome and inconsistent with English procedure for four reasons.  First, Azima has already had a full and fair opportunity to question Respondent under oath, and duplicative depositions are disallowed under the Federal Rules of Civil Procedure which govern the discovery requested here.  Second, Respondent has already, under oath, categorically denied knowledge of or involvement in the hacking incident that Azima alleges, so no purpose would be served by allowing the deposition. Third, even absent the prior testimony, Azima has not offered a basis for deposing Respondent. And fourth, English procedure does not allow depositions, let alone duplicate depositions on re-trial, so respect for English procedure counsels against allowing the new deposition.

**A.     The Court Should Deny the Deposition Because Respondent Has Already Testified, and Duplicate Depositions Are Not Allowed.**

To begin, Azima is not entitled to take further testimony from Respondent in this proceeding because he has already taken his testimony once in the underlying case.  Section 1782 instructs that absent a contrary order, discovery will be governed by the Federal Rules of Civil Procedure, and under the Federal Rules, a party may not take a second deposition of a witness.  *See* Fed. R. Civ. P. 30(a)(2)(A)(ii) (leave of court required to take a deposition where "the deponent has already been deposed in the case").

Courts will permit a second deposition only when "(a) the deposing party was obstructed from fully examining the witness, or (b) new information or new allegations arose post-deposition that would have affected the questioning at the initial deposition." *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14CV1254SHSOTW, 2019 WL 1533212, at *2 (S.D.N.Y.

Apr. 9, 2019); *see also* 7 Moore's Federal Practice – Civil § 30.05 (2021) (second depositions are "disfavor[ed]" and are denied "absent a showing of need or good reason").  More generally, this Court "should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure," *In re Hulley Enters., Ltd.*, 358 F. Supp. 3d 331, 352 (S.D.N.Y. 2019), *aff'd*, 400 F. Supp. 3d 62 (S.D.N.Y. 2019), which permits only discovery that is "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1).  This Court must "limit" discovery that "is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i).

As discussed above, Respondent sat for cross-examination by Azima's own counsel, in the very proceeding underlying his § 1782 Petition here.  That is at least the equivalent of a first deposition under Rule 30.  Azima's counsel had a full opportunity to explore the hacking allegations in that questioning, and did so, including by asking about specific documents on which Azima now again seeks to depose him.  Azima's counsel specifically asked Respondent about the "Project Update" document and about the emails referring to "target[ing]" or "go[ing] after" Azima.  *See, e.g.*, Barger Decl. Ex. 4 (English Proceedings Day 7 Transcript) 185:17–186:15, 189:8–194:4.

His counsel, in short, had a "full and fair opportunity to question" Respondent about his allegations, and allowing a deposition now would be "repetitive and inefficient."  *See In re Application of Christen Sveaas*, No. 19-MC-70, 2008 WL 4935873, at *1 (S.D.N.Y. Oct. 2, 2008) (denying Section 1782 application for second depositions of witnesses).  Counsel also of course had the opportunity to ask about any other document as well, including the "View from the Window" document which counsel had at the time; he chose not to ask about that document, perhaps because there is nothing linking it with Respondent.  Respondent was not the author or

recipient of the document.  Azima's calculated decision not to ask about a document with no facial connection to Respondent, that was already in evidence and fully known to him, is not a reason to allow Petitioner a "do over," or second opportunity to examine Respondent.

Nor does Azima allege that Respondent was untruthful or impeded his counsel's questioning, and he offers "no new circumstances warranting a second deposition."  *See Fashion Exch.*, 2019 WL 1533212, at *2.  In fact, Azima, under examination in the English courts explicitly stated that he found the Respondent to be helpful in trying to resolve his dispute with RAKIA and was a "man of his word."  *See* Barger Decl. Ex. 6 (English Proceedings Day 9 Transcript) 72:11–21.  His putative new evidence on appeal in England did not mention Respondent, the appellate court did not mention Respondent once in its opinion granting a new trial, and Azima's Petition here presents no new evidence regarding Respondent.  A second deposition would merely "re-hash old testimony" and should be denied for that reason alone. *See, e.g.*, *Bonnie & Co. Fashions v. Bankers Tr. Co*., 945 F. Supp. 693, 732–33 (S.D.N.Y. 1996) (denying second deposition of a non-party witness where witness "ha[d] already given a complete deposition concerning her involvement" in the events at issue), *rearg. denied*, 170 F.R.D. 111, 119–20 (S.D.N.Y. 1997).

**B.    The Court Should Not Compel a New Deposition of Respondent Because His Prior Testimony Already Establishes His Lack of Knowledge.**

Separately, where the target of the discovery has affirmed that he or she has no knowledge of the issues in the foreign proceedings, § 1782 discovery should be denied because "taking discovery from [the witness] would have little probative value."  *See, e.g.*, *In re Polygon Glob. Partners LLP*, No. 21 MISC. 364 (ER), 2021 WL 2117397, at *11 (S.D.N.Y. May 25, 2021) (quashing subpoena where witness had previously "testified that he has no recollection of" the subject of the foreign proceedings); *In re Top Matrix Holdings Ltd*., No. 18 MISC. 465 (ER),

2020 WL 248716, at *7 (S.D.N.Y. Jan. 16, 2020) (same); *In re Escallon*, No. 18-MC-207

(DLC), 323 F. Supp. 3d 552, 559–60 (S.D.N.Y. 2018) (same); *see also Lee v. Kucker & Bruh,*

*LLP*, No. 12 CIV. 4662 BSJ JCF, 2013 WL 680929, at *2 (S.D.N.Y. Feb. 25, 2013) ("Where the

proposed deponent has no first-hand knowledge of any issue in the case, no deposition is

justified.").

 Here, Respondent is a lawyer by training and executive, not a hacker or technologist, and

he has already testified under cross-examination at trial and in his sworn witness statement that

he had no involvement in and no knowledge of the alleged hacking.  *See* Barger Decl. Ex. 5

(English Proceedings Day 8 Transcript) 56:12–25.  His witness statement explicitly so stated: he

had "no knowledge of who was responsible for the hacking of Mr Azima and/or the publication

of his data . . . .  No plan to hack Mr Azima's emails or data was ever mentioned to me by

anyone in RAK, or anywhere else, and I was never party to any such plan."  Holden Decl. Ex. B.

¶ 23.  At trial, his undisputed testimony was that he "had no knowledge of Mr Azima's material

being hacked, who hacked it or of it appearing online."  Barger Decl. Ex. 5 (English Proceedings

Day 8 Transcript) 56:12–25; Holden Decl. Ex. B. ¶ 23.  As noted, Azima's own counsel

emphasized during the questioning that he was "not suggesting, Mr. Handjani, at all that you

played any part in the hacking, to be clear . . . ."  Barger Decl. Ex. 5 (English Proceedings Day 8

Transcript) 56:16–17.  With testimony thus already on the record that Respondent does not have

knowledge of the subject matter of Azima's claims, and with no evidence that he does, there is

no reason to allow his deposition.

 **C.** **Azima's Evidence Does Not Suggest That Respondent Was Involved in the
Facts Underlying His Claim, So He Has No Right to Depose Him.**

 Separately, even without that prior testimony demonstrating Respondent's lack of

relevant knowledge, Azima's evidence against Respondent would not be sufficient to warrant a

first deposition, let alone a second.  Azima's description of his claim refers to Respondent

exactly once:  the email sent to Respondent in April 2015 suggesting that RAK's ruler sought to

"target" Azima.  *See* Holden Decl. ¶ 33; Holden Decl. Ex. D.  Azima suggests that this email

from RAK official James Buchanan was a coded instruction to hack his emails.  But there is no

evidence at all to suggest that this is what Buchanan's email meant, and the other email sent to

Respondent that same day and included in the same Exhibit D shows that Buchanan's email had

no such nefarious meaning.  As discussed above, another RAK official wrote to Respondent on

April 4 to say that RAK's Ruler sought a basis for pursuing "charges" against Azima.  That

clarifies the meaning of "target" in Buchanan's email:  it meant (as Respondent has testified) that

RAK's Ruler wants to explore his legal options against Azima.  Exhibit D does not mention

hacking, does nothing to suggest that Respondent had some link to any hacking, and so does not

advance Azima's claim of entitlement to depose Respondent.

Because Azima points to nothing else, he offers no predicate for burdening Respondent

with a deposition even leaving aside the fact that Respondent already testified on this exact topic

and that his undisputed testimony was that he was not involved in any hack.  Indeed, in the

English trial, even Azima conceded that Respondent is truthful.  *See* Barger Decl. Ex. 6 (English

Proceedings Day 9 Transcript) 72:11–21. That would be reason in itself to deny the requested

deposition.  Taken together, the lack of a *prima facie* basis for deposing Respondent, and the

facts that Respondent did testify before in this case, explained that he understood the "target"

email to refer to the possibility of bringing legal proceedings, *see* Holden Decl. Ex. B ¶ 21, and

has consistently and without challenge testified that he had no knowledge of any hacking, make

it trebly clear that a redundant examination by taking his deposition would be pointless and

burdensome for Respondent.

**D.  Depositions Are Not Permitted in English Procedure, and this Court Should Follow *Wildbrain* in Denying the Deposition on That Ground.**

Finally, § 1782 discovery is further improper when it is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country."  *Intel*, 542 U.S. at 265. "[C]omity and parity" are "important as touchstones for a district court's exercise of discretion" in granting or denying a § 1782 application, and the fact that an applicant "may be attempting to obtain [] something that it could not obtain through discovery in the [foreign forum] is certainly a relevant consideration that cuts against its § 1782 petition."  *Saint-Gobain Adfors S.A.S. v. 3M Co.*, No. 020MC00052MJDKMM, 2020 WL 6111632, at *6 (D. Minn. Oct. 16, 2020).

Here, Azima seeks pre-trial testimony, which is not available to him in England. Recently, a court in this district rejected an application for a deposition in similar circumstances. *See In re WildBrain Family International Limited*, No. 19-MC-527 (JPO), 2020 WL 6135765, at *2 (S.D.N.Y. Oct. 19, 2020).  There, the applicant sought to take the deposition of a non-party witness in aid of a pending English proceeding.  The court held that compelling live testimony of a non-party to the English action would offend the third *Intel* factor because it "would be in tension with the proof-gathering procedures that govern the UK tribunal overseeing this dispute," and rejected the deposition as "unwarranted." *Id.*; *see also Kiobel,* 895 F.3d at 245 n.3 (third *Intel* factor weighed against granting application where applicant tried to "bypass [foreign] discovery restrictions and gain access to [discovery] she could not otherwise acquire" because pre-trial discovery was unavailable in the foreign jurisdiction).  This Court should similarly find that the requested deposition is "unwarranted."

That Azima filed his 1782 application right after remand and before his statement of claim has even been finalized also weighs against granting it.  In *Saint-Gobain Adfors S.A.S. v. 3M Co.*, the court denied a § 1782 application where the petitioner sought to obtain discovery

almost immediately after filing suit in the United Kingdom.  The court noted that the applicant's

rush to seek discovery in the U.S. suggested the applicant was "trying to obtain a greater scope

of discovery here than would be permitted by the UK Court." *Saint-Gobain*, 2020 WL 6111632,

at *6.  Here, too, Azima has rushed to file his Petition before commencing post-remand

discovery in England.  That timing "supports an inference that [Azima] is attempting to obtain

information here that is broader than that truly needed to pursue [his] UK lawsuit" and cuts

against his application.  *Id.*

In all, Azima's Petition seeks a duplicative and burdensome deposition on a topic that

Respondent has already testified he knows nothing about, with no basis in the evidence or in

English procedure.  Azima's dissatisfaction with the result of Respondent's prior truthful

testimony does not justify or warrant another attempt on these facts.  His request for a redundant

examination by taking Respondent's deposition should be denied.

## III.   Document Discovery Should Not Be Permitted Because the Request Is Undefined and the Authority Azima Seeks Is Overbroad and Untethered to His Claims.

Azima's request for documentary discovery should also be denied as too burdensome

because the authority to serve subpoenas that Azima seeks is hugely overbroad and untethered to

the facts of his claim, not connected to Respondent, speculative, and because he has failed to

attach his proposed subpoena to his Petition.

Where a party's request for discovery relies on "little more than speculation and

conjecture" and "fails to cite any evidence or concrete facts which would provide even

elementary support for the assertions it makes and the broad swath of discovery it seeks to

obtain," particularly from "a non-party to th[e] lawsuit," it should be denied.  *Neogenix*

*Oncology, Inc. v. Gordon*, No. CV144427JFBAKT, 2017 WL 1207558, at *10, *12 (E.D.N.Y.

Mar. 31, 2017) (denying discovery requested from non-party under Rule 26 where request lacked

17

factual or evidentiary support and moving party "put forth nothing more than conjecture and supposition to support its request").  At minimum, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Edwards v. Daniels*, No. 17-CV-05018 (PMH), 2020 WL 3057412, at *1 (S.D.N.Y. June 9, 2020) (citation omitted) (denying request as irrelevant where the discovery sought went beyond the scope of the claims at issue).

Azima seeks authority to obtain, at his option, "[a]ll documents and communications" between Respondent and at least ten different individuals or entities over a seven-year period from 2014 to the present.  Mem. at 7.  Azima's request to require Respondent to produce "essentially, any document that relates to" Azima is "an overly broad fishing expedition."  *See In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 702, 705 (S.D.N.Y. 2015).  "Blanket requests of this kind" that fail to limit their scope to "certain categories of documents" are "plainly overbroad and impermissible."  *See, e.g.*, *Henry v. Morgan's Hotel Grp., Inc.,* No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016).

Courts have rejected similar unbounded requests for this reason.  For example, courts have held § 1782 requests to be overbroad both when they have requested the production of documents from a time period that "precedes the [events in dispute] by more than one year," *In re Application of Auto-Guadeloupe Investissement S.A.*, No. 12 MC 221 RPP, 2012 WL 4841945, at *9 (S.D.N.Y. Oct. 10, 2012), as well as when they have unreasonably lengthy timespans like the seven-year period Azima proposes here, *see In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1044 (N.D. Cal. 2016) (finding requests spanning 5 to 11 year periods overbroad); *In re T-Systems Scheiz AG*, No. 1:20-mc-308-GHW, 2020 WL 7384007, at *1 (S.D.N.Y. Dec. 16, 2020) (finding request overbroad where it spanned more than

seven years).  Here, Azima requests materials dating from September 2014 to the present, even

though his claims are based principally on alleged hacking activity that occurred between March

2015 and August 2016.  *See* Holden Decl. ¶ 20.  Courts have also rejected requests seeking "all

documents and communications" due to overbreadth.  *See In re XPO Logistics, Inc.*, No. 15-MC-

205 (LGS)(SN), 2017 WL 2226593, at *11–*12 (S.D.N.Y. May 22, 2017) (denying as overbroad

"omnibus request for 'all documents and communications' concerning XPO's integration" with

its California subsidiary), *aff'd*, 2017 WL 6343689 (S.D.N.Y. Dec. 11, 2017); *see also Neogenix*

*Oncology, Inc.*, 2017 WL 1207558, at *10, *12 (denying request seeking a "broad swath" of

discovery from non-party premised on mere speculation and conjecture).

      Nor does Azima offer a basis to conclude that Respondent even might possess any of the

documents he seeks.  For example, Azima seeks documents related to the "View from the

Window" document.  But this is on the basis of Azima's attorney's speculation that Respondent

likely possesses documents "relating to the creation of the 'View From the Window' document"

by virtue of his affiliation with the PR firm, KARV Communications, that created that document.

Holden Decl. ¶ 34.  Azima's counsel has already cross-examined Respondent about his role at

KARV, however.  After Respondent set forth in his written witness statement, and explained

again in cross examination, that KARV made him a "senior advisor" at the time of its founding,

Azima's counsel questioned him about his role at KARV.  Barger Decl. Ex 4 (English

Proceedings Day 7 Transcript) 173:5–175:1.

      None of that goes any way towards suggesting that Respondent, a senior advisor to

KARV along with seven others, during its startup phase, would likely have custody of material

related to a particular document created by KARV in 2015.  Realizing he would not, Azima's

counsel chose not to ask Respondent about the document itself.

In circumstances like these, where an applicant has failed to set out a basis to conclude that a non-party respondent has material relevant to his claims, § 1782 discovery should not be granted.  *See In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d at 705 (denying § 1782 application because the subpoenas would require "broad searches for information when the Petitioner has provided *no* basis to believe" that the respondents had relevant information).  Courts should reject § 1782 applications that make "omnibus and overbroad request[s]."  *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 (PAE), 2020 WL 505042, at *2 (S.D.N.Y. Jan. 31, 2020); *see also In re Application of Elvis Presley Enterprises LLC*, No. 15mc386 (DLC), 2016 WL 843380, at *6 (S.D.N.Y. March 1, 2016) (rejecting § 1782 application as overbroad and because of petitioner's "limited efforts to narrow its requests"); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d at 1043–44 (denying § 1782 application as unduly burdensome "where [the requests] are not narrowly tailored" and "appear to be a broad 'fishing expedition' for irrelevant information" including because the requests were not "narrowly tailored temporally, geographically or in their subject matter").

The situation is, moreover, even worse for Respondent here than that because Azima has made a tactical decision to not even submit a proposed subpoena, so Respondent is prevented from litigating here the propriety of the categories of documents that Azima hopes to compel. This lack of disclosure is not an oversight:  Respondent requested that Azima share a proposed subpoena, but Azima's counsel has refused.  Barger Decl. ¶¶ 9–11.  This attempt to stonewall Respondent and hide his intentions regarding the subpoena he actually plans to serve is gamesmanship, and alone is grounds for denial of the Application.  *See In re Kei Animal Clinic,* No. 20-MC-80183-VKD, 2020 WL 6381341, at *1, *4 (N.D. Cal. Oct. 30, 2020) (denying § 1782 application where applicant "fail[ed] to attach the proposed subpoena with document

20

requests" which "prevents the Court from evaluating whether the discovery [the petitioner] seeks is unduly burdensome or intrusive").  The document subpoenas should not be allowed.

**IV.     In the Alternative, the Court Should Modify the Proposed Order and Issue a Protective Order.**

Alternatively, the Court should at minimum defer decision on the application until the English Court has the opportunity to take up issues related to the scope of discovery and any further evidence to be given by witnesses who testified in the prior trial.  The post-remand proceedings on Azima's counterclaim are just beginning; the legal sufficiency of his statement of claim has yet to be tested.  The English Court should be given an opportunity to manage its case before this Court is asked to step in.

Further, because Azima has not proposed a subpoena, Respondent reserves the right to litigate the scope of any subpoena that is issued and to seek imposition of an appropriate protective order, including an order requiring that any discovery obtained be taken solely for use in the underlying English litigation and not elsewhere.  Azima seeks all communications for at least seven years and related to numerous named and unnamed parties, without any explanation of each party's relevance to his claim.  It would not be reasonable if a subpoena were to issue forcing Respondent, a private citizen, to search through seven years of data without any factual basis.  Further, if a deposition or document discovery were to be ordered despite the objections set forth herein, the subject matter should be closely circumscribed.

**CONCLUSION**

Respondent respectfully requests that this Court deny Petitioner's application for discovery pursuant to 28 U.S.C. § 1782 in its entirety and grant such other relief as is just and proper.

21

DATED: July 28, 2021

**GREENBERG TRAURIG LLP**
By: */s/*
David G. Barger
1750 Tysons Blvd, Ste. 1000
McLean, Virginia 22102
Tel. (703) 749-1300
bargerd@gtlaw.com

Daniel P. Filor
200 Park Avenue
New York, New York 10166
Tel. (212) 801-6758
filord@gtlaw.com

*Attorneys for Respondent Amir Ali Handjani*